IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **GEOFFREY W. FREEMAN**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. **01-665-CJP** |
| | ) | |
| **ALAN UCHTMAN**,[1] | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In Counts 4 and 5 of his Amended Complaint, plaintiff claims that his equal protection rights were violated in the segregation unit at Menard Correctional Center by various race-based procedures.  **See, Doc. 8**.  He seeks injunctive relief only.  The claims were tried to the Court on December 13, 14, and 15, 2005.  Thereafter, the Court granted the parties time in which to submit proposed findings of fact and conclusions of law.  **See, Doc. 192.**  Defendant has done so.  **(Doc. 198)**.

At the close of the evidence, defendant orally moved for judgment pursuant to **Fed.R.Civ.P. 52.**  See, Tr. Vol. 3, p. 39.

Pursuant to **Rule 52(a)**, in a case tried to the Court without a jury, "the court shall find the facts specially and state separately its conclusions of law thereon."  **Rule 52(c)** provides that:

> If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any judgment until the close of all the evidence. Such a judgment shall be supported by findings of fact and conclusions of law as required by subdivision (a) of this

---

[1]Alan Uchtman was substituted as defendant because he is the current warden of Menard Correctional Center.  See, Doc. 170.

1

rule.

Plaintiff claims that his equal protection rights are violated by the following race-based policies of Menard Correctional Center:

1)  Inmates in the segregation unit are celled together on the basis of race, such that white inmates are not celled together with black inmates;

2)  Black inmates are placed in solid door cells, while white inmates are placed in cells with barred doors; and

3)  Counselors treat white inmates better than they treat black inmates in that they are more responsive to the grievances and inquiries of white inmates.

### Findings of Fact

The Court makes the following findings of fact:[2]

1. In 2001, plaintiff, who is African-American, was housed in the segregation unit at Menard Correctional Center. He had difficulties with members of the Gangster Disciples and the Vice Lords. As most of the members of those gangs are black, he requested a white inmate. He was told by his counselor that "that was not permitted." (Tr. Vol 3, 27-28).

2. From 2001 to the date of the hearing, plaintiff had never seen a black inmate housed with a white inmate. (Tr. Vol. 3, 29).

3. The segregation unit is in north one and north two cellhouses. (Tr. Vol 2, 4; Tr. Vol 3, 3, 13).

4. Inmate Steven Frieson is white. (Tr. Vol. 3, 36). He was called as a witness by plaintiff. He was in the protective custody unit at Menard in 2001. He had no relevant testimony. (Tr. vol. 1, 3-6).

5. Inmate Gregory Hudson is black. (Tr. Vol 3, 36). He was called as a witness by

---

[2]The three volumes of the transcript are referred to as "Tr. Vol.1, Tr. Vol. 2, and Tr. Vol. 3."

2

plaintiff. He has been in Menard since November of 1997. He has been housed in various areas, including the north cell house. He has never had a white cellmate. (Tr. Vol. 2, 4). He has never seen a white inmate housed with a black inmate in the segregation unit. (Tr. Vol. 2, 7). He has been in the segregation unit "many a times." (Tr. Vol 2, 6). The last time was about 8 months prior to trial. (Tr. Vol 2, 9).

  6. Hudson has never seen a black counselor at Menard. The counselors "don't do anything." (Tr. Vol. 2, 5). He doesn't know if a black counselor would be any better. (Tr. Vol. 2, 8).

  7. Inmate Travis Dortch is black. (Tr. Vol 3, 36). He was called as a witness by plaintiff. He has been in the north one cellhouse since 1994. He has never seen a black inmate living with a white inmate. (Tr. Vol 2, 26). He was in protective custody, and then was placed in the segregation unit in 1996. He had a single man cell with bars on the doors there. (Tr. Vol. 2, 29-30).

  8. Dortch requested a white cellmate in 1998. His request was refused. (Tr. Vol. 2, 30-31).

  9. Dortch has never seen a black counselor at Menard. (Tr. Vol. 2, 28).

  10. Inmate Duane Woodson is black. (Tr. Vol. 3, 36). He was called as a witness by plaintiff. He was in segregation at Menard from April 6, 2005, to May 31, 2005. (Tr. Vol. 2, 36). He never saw a white prisoner celled together with a black prisoner in segregation. (Tr. Vol. 2, 36). He thinks there is one black counselor. He has never had a black counselor. He had complaints about how a grievance was handled, but was not able to say it was a racial problem. (Tr. Vol. 2, 41).

  11. Woodson testified that, when the counselors make rounds, they wake up sleeping white inmates, but do not wake up sleeping black inmates. (Tr. Vol. 2, 37-38). He does not

3

know if the inmates who are awakened have specific issues that the counselors are following up on. (Tr. Vol. 2, 42-43).

  12. Inmate Gregory Turley is white. (Tr. Vol. 3, 37). He was called as a witness by plaintiff. He was at Menard from 1991 to June, 2000. He returned to Menard on December 17, 2003, and was still there at the time of the hearing. He is housed in the north one cellhouse. (Tr. Vol. 3, 3). He has never had a black cellmate in Menard. (Tr. Vol. 3, 4). He has had a Latino cellmate. (Tr. Vol. 3, 7). He has never requested a black cellmate. (Tr. Vol. 3, 11).

  13. Turley testified that there about 25 counselors at Menard, and only one is black. He testified that he has not observed counselors "doing anything for inmates." (Tr. Vol. 3, 8). His counselor is white, and is "ineffective." (Tr. Vol. 3, 9). There are complaints about the way grievances are handled whether the inmate is black or white. (Tr. Vol. 3, 9-10).

  14. Inmate Carl Moss is white. (Tr. Vol. 3, 37). He was called as a witness by plaintiff. He has been housed in the segregation unit. He has never seen a white inmate housed with a black inmate, unless the black inmate had a Hispanic name. (Tr. Vol. 3, 13). He testified that he never had a black cellmate at Menard. (Tr. Vol.3, 14). He also testified that, in 2000, he had a black cellmate with a Hispanic name, for 3 or 4 days. He testified that they were separated because of their race. This took place in the south lowers. (Tr. Vol. 3, 17).

  15. Inmate Kenneth Key is black. (Tr. Vol. 3, 37). He was called as a witness by plaintiff. He was a cell house clerk in the east cell house from 1986 to 1990. (Tr. Vol. 3, 24). His testimony about his work as a cell house clerk will be disregarded as it is not relevant to the issue of an on-going constitutional violation in the segregation unit.

  16. Major Anthony Ramos was called as a witness by defendant. He has been with the IDOC for 22 years, and has been assigned to Menard since 1999. (Tr. Vol. 2, 13). He testified that 70% of the inmates at Menard are black, 20 to 25% are white, 5% are Hispanic, and

4

1 to 2% are Asian. The demographics are about the same in the segregation unit. (Tr. Vol. 2, 24-25).

17. Ramos testified that, when an inmate is assigned to the segregation unit, he is first assigned to a single cell while a "double celling instrument" is completed. This form notes information about the inmate's crime, mental health status, medical issues, gang affiliation, escape risk and whether he is a staff assaulter. This information is used to place the inmate with a cellmate. The double celling instrument does not say that a black inmate has to be celled with a black inmate. (Tr. Vol. 2, 13, 18-21). Ramos testified that cell assignments are not based on race. (Tr. Vol. 2, 13-14).

18. Ramos testified that race is not a factor in assigning inmates to steel door cells as opposed to barred door cells. (Tr. Vol. 2, 14-15). In the segregation unit, one gallery is used as the intake gallery. Usually, when an inmate in brought into segregation, he is housed in a single cell on that gallery. If there is no room on that gallery, he is placed in an available single cell; "if it happens to be a solid front door, that's where he'll be placed." (Tr. Vol. 2, 14-15).

19. Plaintiff asked Ramos to explain why more blacks than whites are in solid door cells. He replied that, if that is the case, an explanation would be that there are more black inmates in solid door cells because the majority of inmates at Menard are black. (Tr. Vol. 2, 24). 20. Ramos testified that there are 652 beds in the segregation unit, and that 150 to 175 of the cells have solid steel doors. (Tr. Vol. 2, 14).

## Conclusions of Law

Racial segregation in a prison, like other forms of government imposed systems of racial classification, is subject to strict scrutiny. Such racial classification violates the Fourteenth Amendment unless the classifications are narrowly tailored measures that further compelling government interests. ***Johnson v. California*, 543 U.S. 499, 505-506, 125 S.Ct. 1141, 1146 -

5

**1147 (2005).** The Supreme Court recognized in *Johnson* that the "'necessities of prison security and discipline,' [citation omitted] are a compelling government interest justifying only those uses of race that are narrowly tailored to address those necessities." *Id.*, **543 U.S. at 512, 125 S.Ct. at 1150.**

The Supreme Court in *Johnson* did *not* hold that the California prison system's policy of making race-based housing assignments violated the Constitution. It simply held that strict scrutiny is the proper analysis, and remanded the case for further proceedings. *Id.* **543 U.S. at 515, 125 S.Ct. at 1152.**

There is a crucial difference between this case and *Johnson*. In *Johnson*, it was established that the California prison system did, in fact, follow "an unwritten policy of racially segregating prisoners in double cells in reception centers for up to 60 days each time they enter a new correctional facility." *Id.* **543 U.S. at 502, 125 S.Ct. at 1144.** In contrast, here, defendant disputes the existence of the alleged racial classifications. Thus, the Court must first turn to the issue of whether plaintiff established that racial classification is practiced in the three areas alleged, i.e., cellmate assignments, assignment to solid door cells, and provision of counselor services. Plaintiff's claims are limited to the segregation unit at Menard.

Plaintiff's evidence did not establish that Menard follows a policy of racially segregating inmates in cell assignments. Mr. Freeman testified that he requested a white cellmate one time in 2001, and the request was refused. He presented the testimony of six inmates (other than Frieson); four were black and two were white. All of these inmates testified that they had never seen a black inmate housed with a white inmate.

The testimony of most of these witnesses is of doubtful relevance to the issue of an on-going violation. Moss was in the segregation unit, but did not specify when. Moss testified that he and a black cellmate were separated, but that took place in 2000 and did not happen in the

segregation unit. Key's testimony concerned celling practices in the late 1980's in a unit other than segregation. He offered no testimony about recent or current practices in the segregation unit.

That leaves the testimony of inmates Dortch, Hudson, Woodson and Turley. Dortch, Hudson and Woodson are black. They testified that they had never seen a black inmate housed with a white inmate in segregation. Turley is white. He testified that he has never had a black cellmate, but has had a Latino cellmate.

Plaintiff's evidence established only that he and four other inmates had been in the segregation unit at Menard in the recent past, and none of them had ever had a cellmate of another race, and had never seen a black inmate celled with a white inmate. Of these witnesses, one (Woodson) was in the seg unit for less than two months. This testimony amounts to no more than the casual observations of these inmates. There was no indication that plaintiff or any of his witnesses had undertaken any sort of systematic observation or analysis. There was no presentation of any statistical data. Plaintiff's evidence did not establish the existence of a policy or procedure of racial segregation. **See, *Palmer v. Marion County*, 327 F.3d 588, 597 (7th Cir. 2003) ("a showing of isolated incidents does not create a genuine issue as to whether defendants have a general policy or a widespread practice of an unconstitutional nature.")**

The direct evidence with regard to cell assignments came from Major Ramos. He testified that a number of factor are considered, including the inmate's crime, mental health status, medical issues, gang affiliation, escape risk and history of staff assault. He denied that race is a factor. He also testified that, due to considerations about gang affiliations, it sometimes works out that a black inmate will be celled with a black inmate to avoid gang conflicts. (Tr. Vol. 2, 16-17). However, the evidence indicated that the actual gang affiliation was considered,

7

rather than using race as a proxy for gang affiliation.

The evidence established that there are 652 beds in the segregation unit. Seventy percent of the inmates at Menard are black, and twenty to twenty-five percent are white. The only evidence of the racial break-down in the segregation unit is that it is about the same as the breakdown of the institution in general. The racial demographics alone dictate that a large percentage of the black inmates in the unit will be housed with black cellmates.

The evidence established that cell assignments are the result of consideration of race-neutral factors. Combined with the demographics of the inmate population, this no doubt results in a situation where some, if not many, black inmates are assigned black cellmates. However, this situation does not appear to be the result of a policy or procedure of racial segregation.

Likewise, Plaintiff did not establish that inmates are assigned to solid door cells in the segregation unit on the basis of race. 150 to 175 of the segregation cells have solid steel doors. Plaintiff did not ask each of his witnesses what kind of cell he had in segregation. Dortch, who is black, testified that he had a cell with bars in 1996. (Tr. Vol. 2, 29-30). Hudson testified that black inmates are "mainly behind the steel doors." (Tr. Vol 2, 7). Again, there was no systematic observation or analysis, and no statistical data presented.

Ramos' testimony was not as explicit as it could have been on this point, but the inference was that low aggression inmates are given preference in assignment to a barred door cell. (Tr. Vol. 2, 14). Ramos denied that the decision was based on race. The evidence, taken as a whole, does not establish that black inmates are assigned to the solid door cells because of their race.

Lastly, the evidence did not establish that counselors treat inmates differently on the basis of their race. There was some testimony that counselors wake white, but not black, inmates when they make rounds. However, there was also evidence that white inmates are dissatisfied

8

with their counselors.  Turley, who is white, testified that his counselor, who is also white, is ineffective.  Turley testified that there are complaints about the way grievances are handled whether the inmate is black or white.  (Tr. Vol. 3, 8-10).

Plaintiff did establish that there is only one black counselor at Menard, but the Court finds this fact to be of no significance.  The constitution does not require that a black inmate be assigned a black counselor.

In sum, plaintiff failed to establish a necessary element of his case, that is, that officials at Menard engage in racial classification in assigning cellmates in segregation, or in assigning inmates to solid door cells, or in the provision of counselor services.  Therefore, defendant is entitled to judgment as a matter of law.

Defendant's oral motion for judgment pursuant to **Fed.R.Civ.P. 52(c)** is **GRANTED**.

**The Clerk of Court is directed to enter judgment in favor of defendant and against plaintiff on counts 4 and 5 of the amended complaint.**

**IT IS SO ORDERED.**

**DATE:  March 23, 2006.**

    **s/ Clifford J. Proud**
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**